OPINION
In September 2000, Nakia Tucker was convicted by a jury in the Franklin County Court of Common Pleas of four counts of felonious assault with firearm specifications. The jury acquitted him, however, of the four counts of attempted murder and one count of having a weapon under disability with which he was also charged. Mr. Tucker was ultimately sentenced to consecutive prison terms of two years each for the four felonious assault convictions, and three-year terms for the accompanying firearm specifications. Each of the four two-year terms were ordered to be served consecutively to each other; in addition, the judge ordered the three-year terms for the firearm specifications (which merged into one for sentencing purposes) to be served consecutively to the other four terms.
The charges arose from an April 2000 incident during which Mr. Tucker was accused of firing gunshots at an automobile, inside of which were four young women. The pertinent details of the allegations are set forth below.
In November 2000, counsel from the office of the Franklin County Public Defender filed a motion seeking leave to file a delayed direct appeal of Mr. Tucker's convictions. This court granted the motion in January 2001.
On April 9, 2001, counsel from the separate office of the Ohio Public Defender, the state's counterpart to the county's office, filed a petition with the trial court to vacate Mr. Tucker's convictions, pursuant to Ohio's post-conviction relief (hereinafter "PCR") statute, R.C. 2953.21. Pursuant to an entry filed May 3, 2001, the trial court denied the petition without conducting a hearing.
Nakia Tucker (hereinafter "appellant") has timely appealed the denial of his PCR petition, assigning a single error for our consideration:
 Petitioner Nakia Tucker was denied his state and federal constitutional rights to the effective assistance of trial counsel and the court below erred in denying and dismissing Mr. Tucker's post-conviction petition alleging this denial of rights.
Resolution of appellant's PCR appeal necessitates some reference to his direct appeal. Accordingly, we first glean the underlying facts of the case established at trial as set forth in this court's recent opinion arising from the direct appeal. In State v. Tucker (Nov. 6, 2001), Franklin App. No. 00AP-1304, unreported ("Tucker I"), the court summarized the facts as follows:
 Katrina Gregory, age eighteen, and three girlfriends, ages sixteen to nineteen, went to a restaurant known as BW-3 in Gahanna, Ohio. The automobile was driven by Erica Parks, age nineteen. While they were there, appellant, a boyfriend of Katrina, came to their table. He was upset with Katrina because she was partying that late in the evening and showed them a silver .25 caliber handgun that apparently he had tucked into his sock. Later, an argument ensued between appellant and Katrina, and according to two of the girls, appellant told them they should leave or he would shoot their car tires. They thought he was kidding. However, when the girls pulled out of the parking entrance, they saw appellant approaching from behind the car. Two of the girls testified that they saw him in the rearview mirror pointing a gun toward them. There were three or four shots. They pulled away to a neighborhood where they could stop and look at the rear of the automobile. The girls noticed a bullet lodged in the rear bumper and a hole above the license plate. They used a cell phone to call the Columbus police who referred them to the Gahanna [P]olice [D]epartment because of the location of [the] restaurant. Four shell casings were recovered from the parking lot as well as a bullet from the rear bumper of the automobile. An expert from the Bureau of Criminal Investigation testified that all the shell casings were .25 caliber bullets. Neither of the bullets that struck the car were able to penetrate into the vehicle. Appellant did not present any evidence. [Id. at 2-3; emphasis added.]
In Tucker I, the court addressed two issues on direct appeal: first, the purported ineffectiveness of trial counsel; and, second, an alleged sentencing error.
Reviewing these issues in inverse order here, the Tucker court sustained the second assigned error challenging the trial court's erroneous sentencing. In particular, this court agreed that "the trial court erred in imposing consecutive terms of incarceration because the sentence failed to comply with the requirements of R.C. 2929.14(E)." Id. at 7. In fact, the state had conceded error insofar as the trial court failed both to make the necessary statutory findings and made factual errors in its findings. Having sustained the assignment of error, this court remanded the case to the trial court for resentencing.
The issues raised relative to the purported ineffective assistance of trial counsel are of more import to the instant PCR appeal which, of course, raises an identical "ineffectiveness" issue. However, by its very nature, the alleged ineffectiveness addressed by way of a PCR petition is different than that potentially subject to review on direct appeal.
On direct appeal, appellate counsel argued specifically that trial counsel was ineffective because he "failed to timely object to the introduction of inadmissible evidence and elicited testimony that was highly damaging and unfairly prejudicial." Id. at 2. The Tucker I court overruled this assignment of error, ultimately determining that appellant had failed to meet the long-established, burdensome standard as set forth in the syllabus of State v. Bradley (1989), 42 Ohio St.3d 136:
 2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391 * * *; Strickland v. Washington [1984], 466 U.S. 668, followed.)
 3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
PCR petitions are governed by R.C. 2953.21 which provides, in relevant part:
 (A)(1) Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
* * *
 (C) * * * Before granting a hearing on a petition * * *, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * * If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.
* * *
 (E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending. * * * [Emphasis added.]
In the present appeal, appellant contends that the trial court erred in denying him a hearing on his petition for PCR. More particularly, appellant claims that the trial court erred in finding that his PCR petition did not allege "sufficient operative facts" to warrant a hearing. It is well-established that in a PCR petition alleging ineffective assistance of counsel, the petitioner "bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." State v. Jackson (1980),64 Ohio St.2d 107, syllabus.
In analyzing this issue, we are guided by State v. Calhoun (1999),86 Ohio St.3d 279, in which the Supreme Court of Ohio thoroughly examined Ohio's "Post-Conviction Remedy Act," as codified by R.C. 2953.21. The court held, at its syllabus:
 1. In reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact.
 2. Pursuant to R.C. 2953.21(C), a trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief.
 3. A trial court properly denies a petition for postconviction relief, made pursuant to R.C. 2953.21, and issues proper findings of fact and conclusions of law where such findings are comprehensive and pertinent to the issues presented, where the findings demonstrate the basis for the decision by the trial court, and where the findings are supported by the evidence. [Emphasis added.]
In this case, the trial court issued "findings of fact" which accurately set forth the history of appellant's criminal case up to the point in time when the decision on the PCR petition was journalized. The decision also contains conclusions of law which apply to PCR petitions generally. However, the conclusions of law which are addressed to appellant's case specifically are a source of concern for this court. For instance, the very first conclusion of law reads: "[t]he Petitioner has failed to show a violation of constitutional dimension which occurred at the time he plead." (Decision at 7.) As noted above, appellant never entered a guilty plea. He was found guilty at a jury trial.
The third conclusion of law journalized by the trial court reads:
 The Petitioner has failed to identify specific acts or omissions which serve as the basis of a claim of ineffective assistance of counsel. Further, there is no indication that, but for the alleged errors of counsel, the result of Petitioner's proceedings would have been different. * * *
One of the issues raised in the PCR petition was appellant's competence to even stand trial. If appellant was not competent to stand trial, he necessarily could not have been convicted at trial. Thus, the proceedings clearly would have been different.
The fourth conclusion of law reads:
 The Petitioner has failed to establish that he was incompetent to stand trial. There is no evidence that the Petitioner lacked the ability to consult with his attorney and lacked a factual understanding of the proceedings against him. State v. Berry (1995), 72 Ohio St.3d 354, 359 * * *. Further, although the Petitioner was placed on suicide watch prior to the present case being indicted, there is no evidence that he was mentally incompetent at the time of trial.
The information provided in conjunction with the PCR petition indicates that appellant's IQ was tested at 72 in 1991. As a result of this and other testing, he was diagnosed as developmentally handicapped by the Columbus Public Schools. He also was classified as "disabled" for purposes of receiving Supplemental Security Income ("SSI") by the Social Security Administration. Additional information provided with the PCR petition indicates that appellant's mental limitations were or could have been compounded by psychological problems which necessitated a "suicide watch" and psychological consultation while he was in custody awaiting trial.
The PCR petition filed on behalf of appellant also includes an affidavit from appellant's mother with respect to his mental challenges and the need for her to handle his finances due to her son's "mental disability."
Under the circumstances, we do not believe that the issue of appellant's competence to stand trial could be resolved without a formal hearing, particularly given the standards set forth above in Calhoun, supra.
Since the issue of competency will need to be examined at an evidentiary hearing, the trial court should also consider the possible effect of Lamont McGee's potential testimony at the same time. Mr. McGee, as a family member, automatically presents some credibility issues. See Calhoun, supra, at 284-285, citing State v. Moore (1994),99 Ohio App.3d 748, 754-756. However, he claims to have been present when the shooting occurred and claims that his observations exonerate appellant. Such "proof of innocence" should at least be heard in open court so that the trial court can determine whether this individual's testimony had the potential to change the outcome of the trial.
Given the foregoing, we sustain the assignment of error. Therefore, this case is reversed and remanded to the trial court for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
DESHLER and BROWN, JJ., concur.